UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 04-20658-Civ-TORRES

Consent Case

DARBY MARITIME LIMITED,

     Plaintiff,

vs.

HOLLAND & KNIGHT, LLP, MICHAEL T.
MOORE, DANIELLE GRUCCI BUTLER, KOCH,
NEWTON & PARTNERS, L.C., and JOHN
ROBERT NEWTON III a/k/a ROB NEWTON,

     Defendants.

_____/

### HOLLAND & KNIGHT, LLP, MICHAEL T. MOORE AND DANIELLE J. BUTLER'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON DARBY'S CLAIMS FOR DAMAGES SURRENDERED IN SETTLEMENT

Pursuant to Local Rule 7.1.C. of the United States District Court for the Southern District of Florida, Defendants Holland & Knight, LLP, Michael T. Moore and Danielle Butler (collectively "H&K") file their Memorandum of Law in Support of their Motion for Partial Summary Judgment.

### I.   BACKGROUND

Darby Maritime Limited ("Darby") exists for the purpose of owning a luxury motor yacht. Greg Brady is Darby's sole director. Ex. 1 (Brady Depo. Tr. at 36:19-37:23). Brady retained H&K on Darby's behalf in July of 2001 to redraft an agreement in connection with

1

the purchase of a luxury motor yacht (the "Vessel") from Sensation Yachts Limited ("Sensation"). Amended Compl. at ¶ 11. Defendants Michael Moore and Danielle Butler were the H&K attorneys involved in the representation. Amended Compl. at ¶ 13. After nearly a year of on again/off again negotiations, Darby and Sensation executed the Vessel Construction Agreement ("VCA") on March 29, 2002. *See* Ex.2. Darby was to pay Sensation $15,820,000 in cash upon the signing of the agreement and another $4,500,000 on September 1, 2002. Ex. 2 (VCA, Art. 11). The large initial payment was in consideration of the Vessel's seventy-percent completion at the time the parties executed the VCA.

Under the VCA, the Vessel was scheduled for delivery on October 31, 2002. Ex. 2 (VCA, Art. 2 ). If it was not delivered within thirty days of that date, Sensation was to pay Darby $3,000 per day of delay. Ex. 2 (VCA, Art. 15(b)). The VCA's limitation of liability clause barred recovery of all consequential damages for any reason in connection with the Agreement. Ex. 2 (VCA, Art. 29(e)). This clause limited recovery of delay-related damages to the Article 15 liquidated damages clause.

Delivery did not occur on October 31, 2002. Instead, Sensation delivered the Vessel more than two years later. Ex. 1 (Brady Depo Tr. at 172:11-17). During this time – and even before the contractually scheduled delivery – numerous disputes arose between Darby and Sensation. The most significant of these were disputes related to delay. The parties arbitrated certain of theses disputes in London in December, 2002. Nearly two years after that arbitration, Darby and Sensation settled all of their disputes in

September 2004 by executing an Amendment to the VCA. Ex. 1 (Brady Depo Tr. at 158:1-21). In that settlement, Darby released all claims it had against Sensation, including delay-related claims and claims related to the Vessel's draft.[1]   Ex. 3 (Amendment to VCA, Section 1).

In this lawsuit, Darby contends that H&K's negligence in drafting the VCA put it on uneven footing in the settlement negotiations with Sensation. Amended Compl. at ¶¶ 19 & 21. In particular, Darby asserts that the VCA is unclear in establishing Darby's legal title to and ownership of the Vessel, and that it did not adequately memorialize the parties' agreement that Darby's interest was to be secure up to the amount of payments it had made. Amended Compl. at ¶¶ 18(e), (f) & (m). The issue of ownership and title became central to the parties' disputes in 2004 when Sensation purportedly threatened bankruptcy during the course of negotiating a settlement with Darby. Ex. 1 (Brady Depo Tr. at 177:2-178:3). Sensation allegedly claimed that bankruptcy would deprive Darby of its interest in the Vessel, including the money it had already paid toward its purchase. *Id.* The result of this threat, Darby contends, is that it was in a weak bargaining position when it sought to enforce its rights against Sensation. Amended Compl. at ¶¶ 19 & 21; *see* Ex. 4 (Darby's Amended Answers to Defendants' Interrogatories, p. 5). Brady contends he believed that if Sensation went into bankruptcy, Darby's interest would have been wiped out in favor of

---

[1]     Only these delay-related and Vessel draft claims are the subject of this Motion.

Case No. 04-20658-Civ-TORRES

a secured lien created by the extension of credit to Sensation by another creditor.[2]  Ex.1

(Brady Depo. Tr. at 177:2-178:9).  Darby alleges that it was therefore "forced" to settle with

Sensation and to give up valuable rights because H&K failed to ensure that its rights to the

Vessel were superior to those of the Yard's lender. Ex. 1 (Brady Depo Tr. at 177:24-178:9).

It seeks to recover from H&K damages related to the rights it surrendered in the settlement.

These rights include rights to recover delay-related damages for which Sensation was

responsible, Ex. 3 (Amendment to VCA, Section 1), and rights to recover damages relating

to the Vessel draft.  Ex. 1 (Brady Depo. Tr. at 161:21-162:5).

Articles 16(a) and 16(d) are the VCA provisions Darby contends are ambiguous.

These sections provide:

> Article 16. Legal Title
>
> a)     . . . [The Vessel] shall upon the effective date of this Agreement become and remain the absolute property of the Builder (and be at the risk of the Builder) until the Vessel is delivered to the Purchaser (subject only to the Purchaser's Lien for amounts paid under the Agreement). . .
>
> * * *
>
> d)     Ownership of the Vessel . . . shall progressively pass to the Purchaser free of any liens, to the extent only of the value of the state of construction of the Vessel . . . the Purchaser will not be entitled to take possession of the Vessel whether completed or not until the Purchaser has paid in full all

---

[2]     Before Darby and Sensation had entered into negotiations for the Vessel's purchase, the brother of Sensation's owner had lent the Yard money and registered a charge (the "Debenture") over Sensation's present and future assets. Ex. 5 (Debenture). The Debenture was a floating lien on stock in trade and work in progress.  It did not, however, attach to stock in trade which was sold by Sensation in the ordinary course of Sensation's business. Ex. 5 (Debenture, Schedule B, Section 4(a)(xi)(A)).

> amounts to which the Builder is entitled to claim based on the value of the stage of construction work pursuant to this Agreement.

Ex. 2 (VCA, Article 16 (a) and (d)).

As we will show below, the VCA clearly and unambiguously protected the very rights Darby claims it was supposed to have. We will also show that New Zealand law afforded Darby those same rights. Therefore, even if the VCA was unclear, the lack of clarity caused Darby no damage. In addition, in settling with Sensation, Darby abandoned its claims against H&K. Alternatively, even if it could recover delay-related damages and damages related to the Vessel's draft from H&K, the measure of the delay damages is limited by the VCA's limitation of liability and liquidated damages provisions. For these reasons, summary judgment on these claims is appropriate.

## II.   ARGUMENT

## A.   Legal Standards Applicable To Motions For Summary Judgment.

The standards governing this motion are well known. Under Rule 56, the court must enter judgment where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed. R. Civ. P.; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). The moving party's "initial responsibility" consists of "informing the [trial] court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 322. All reasonable inferences are to be drawn in favor of the non-moving party, but only those inferences that are reasonably supportable by the facts. *Id.*

5

Case No. 04-20658-Civ-TORRES

B.    Darby Would Have Prevailed Against Sensation As A Matter Of Law.

   1.    *The VCA Unambiguously Protected Darby's Rights in the Vessel.*

The sole issue for the Court with respect to the delay damages claims is whether the VCA adequately established Darby's ownership interest in the Vessel. To wit, did the VCA establish Darby's interest in the Vessel proportionate to the payments Darby made toward its purchase? The answer to this questions is clearly "yes."

Contractual construction is an issue for the Court. The VCA must be "construed in accordance with English law." Ex. 2 (VCA, Art. 29(b)). English law does not vary from U.S. law on issues of contractual construction. Like the law in this country, under English law a court construing an agreement must reconcile seemingly inconsistent provisions if it can fairly do so. *See Pagnan S.P.A. v. Tradax Ocean Transportation S.A.*, 2 Lloyd's Rep. 342 (Ct. of App. 1987). App., Tab A.[3] If two clauses of a contract appear to be in conflict, the preferred interpretation is the one that gives effect to both. *Goldmile Properties Ltd. v. Lechouritis*, 2 P. & C. R. 1 (Ct. of App. 2003). App., Tab B. Therefore, an ambiguity is not invariably present when a contract requires interpretation. Like courts here, English courts have emphasized that an agreement must be construed objectively in accordance with the natural and ordinary meaning of the words used. *Mannai Inv. Co. Ltd. v. Eagle Star Life Assur. Co.*, 2 W.L.R. 945 (House of Lords 1997). App., Tab C. A contract's individual terms must not be considered in isolation. Instead, they must be viewed as a whole and

---

[3]    All foreign case law and statutes referenced herein are compiled in an Appendix filed with the Court. References to the Appendix shall be by the abbreviation "App., Tab ___."

6

in relation to one another. *Forbes v. Git and Others*, 1 AC 256 (Privy Council 1922).  App.,

Tab D.  Applying these principles of construction, a review of the VCA establishes that it

protected Darby's ownership rights in the Vessel.

We start first with the sections Darby claims are in conflict, rendering the agreement

ambiguous.  Article 16(a) provides:

> Article 16.  Legal Title.
>
> (a)    The Vessel . . . shall remain the absolute property of the Builder (and be at the risk of the Builder) until the Vessel is delivered to the Purchaser (subject only to the Purchaser's Lien for amounts paid under the Agreement) . . . .

For its part, Article 16(d) provides:

> (d)    Ownership of the Vessel and Equipment to be contracted and/or supplied pursuant to this Agreement shall pass progressively to the Purchaser free of any liens, to the extent only of the value of the state of construction of the Vessel and equipment invoiced by the Builder paid in full by the Purchaser to the Builder . . . .

Ex. 2 (VCA, Art. 16 (a) and (d)).      As the court can see on the face of these sections, they

are not inconsistent.  Rather, Articles 16(a) and (d) simply address different rights.  On the

one hand, Article16(a) is a standard risk of loss provision.  It establishes in Sensation a

possessory right in the Vessel while it is being built, and protects Darby by assigning to

Sensation the risk of the Vessel's loss while Sensation remains in its possession.  That

section also protects Darby's ownership interest in the Vessel, providing that Sensation's

possessory rights are subject to Darby's purchase lien in the amount of money it has paid

toward purchase.

Case No. 04-20658-Civ-TORRES

Article 16(d) is not inconsistent with the rights established in Article 16(a). Instead, it compliments the rights set forth there and expands upon and clarifies the question of ownership. Specifically, it provides that Darby owns the Vessel in proportion to payments it has made to Sensation. Other provisions in the VCA are in accord, including the last sub-section of Article 16. Further clarifying the parameters of possessory rights and ownership established in Articles 16(a) and (d), Article(e) provides that the Builder shall be "entitled to a possessory lien over the Vessel . . . for any monies unpaid [under] the Agreement . . . ." Ex. 2 (VCA, Art. 16(e)). Reading the contract as a whole as the law requires it to be, Article 16 provides that Darby had title to the Vessel coextensive with payments made toward its purchase. Sensation has possession until the Vessel is fully paid for, and it bears the risk of loss while the Vessel is in its possession.

Other VCA provisions support the unambiguous construction that title passed to Darby progressively in proportion to the payments it made. Article 29(d) has the same effect as Article 16(e). It provides that the Builder shall have a possessory lien on the Vessel and property owned by the Purchaser in the Builder's possession to the extent of any amounts due and owing to the Builder. Viewing Article 29(d) from the Purchaser's perspective, it "owns" the Vessel, but the Builder has a lien to the extent of payments that are still due and owing to it. This is identical to the notions of progressive passage of ownership embodied in Articles 16(d) and (e). Article 11(b) addresses this concept in the context of bankruptcy, and is in accord with Article 16 and 29. Article 11(b) provides that, in the event of Sensation's bankruptcy, insolvency or liquidation, **"[Darby] shall have the**

**right to legal title and possession of the Vessel for the price the Purchaser has paid to the Builder to date."** Ex. 2 (VCA, Article 11(b)(emphasis added).

The law prohibits the court from reading individual paragraphs of an agreement in isolation, as Darby contends should be done here. As the foregoing sections illustrate, when standard principles of construction are used, the VCA is susceptible to only one reasonable construction. That is, Darby at all times was the Vessel's owner to the extent of payments already made. It simply had no risk of losing its investment if Sensation declared bankruptcy. The VCA accomplished its purpose.

### 2. *Darby Would Have Taken the Vessel Free and Clear of the Security Interest Created by the Debenture.*

Even if the VCA did not clearly create the ownership interest the parties intended, that interest existed as a matter of law. The validity, perfection and effect of perfection of a security interest in goods situated in New Zealand is governed by New Zealand law. Sensation was building the Vessel in New Zealand, so New Zealand law controls this issue. We demonstrate below that under New Zealand law Darby purchased the Vessel from Sensation in the ordinary course of Sensation's business as a builder. As such, in the event of Sensation's bankruptcy Darby would have taken the Vessel free and clear of any other security interest, including the security interest created by the Debenture. Darby's ownership interest was fully protected up to the value of its payments. This is the very protection Darby claims it was supposed to have.

9

Case No. 04-20658-Civ-TORRES

(a)    *On its face, the Debenture did not subordinate Darby's interest.*

New Zealand law does not support the insecurity Darby claims to have felt when Sensation threatened bankruptcy. Contrary to Darby's claims here, the floating security interest established by the Debenture did not create in the Debenture-holder an interest in the Vessel superior to Darby's. Put differently, Darby's interest in the Vessel was protected. This is so because Darby was a purchaser of the Vessel in the ordinary course of business. And section 4 of the Debenture excepts from its reach goods sold in the ordinary course of the Yard's business. That section provides:

> 4.    WHEN SECURITY BECOMES ENFORCEABLE
>
>    (a) if:
>
>    \* \* \*
>
>    (xi) the company sells, transfers, exchanges, leases, parts with possession of or otherwise dispose of, removes, destroys, mortgages, changes, encumbers, or grants a lien over, any of the charged property, or agrees to or permits any of theses things to happen, **other than**: **(A) The sale of stock in trade in the ordinary course of business at full market value** . . . .

Ex. 5 (Debenture, Schedule B, Section 4(a)(xi)(A))(emphasis added).

Darby could not have been in doubt about its rights under New Zealand law. Darby's New Zealand attorneys advised Brady of Darby's superior interest prior to its settlement with Sensation. In a June 12, 2003, email, one of Darby's New Zealand attorneys offered it careful, and somewhat confusing advice as to Darby's rights. But he ultimately concluded without equivocation:

10

Case No. 04-20658-Civ-TORRES

> **However, as Darby will be purchasing the Vessel from the Builder in the ordinary course of business of the Builder, Darby should, in our view, take the Vessel free of Michael Erceg's security interest [created by the Debenture].** The reasons for this are discussed more fully in question 4 below.

Ex. 6 (Scott Hawkins' June 12, 2003 email to Brady)(emphasis added).

As promised, he explained his reasoning later in that e-mail:

> 4.    If Darby purchases the Vessel from the Builder in the ordinary course of business of the Builder, Darby should, in our view, take the Vessel free of Michael Erceg's security interest in this scenario.  The reasons for this are two fold:
>
> Firstly, under the PPSA, a buyer of goods sold in the ordinary course of business of the seller takes the goods free of a security interest given by the seller, unless the buyer knows that the sale constitutes a breach of the security agreement under which the security interest was created.  In this respect, we note that knowledge under the PPSA in this case would require Darby to have knowledge of the contents of Michael Erceg's security agreement (which we understand is not currently the case) or receive a notice, prior to purchase, stating that there has been a breach.  The registration of a financing statement by Michael Erceg on the PPSR, as is currently the case will not constitute knowledge.
>
> Secondly, under the PPSA, a security interest in the Vessel would extend to the proceeds of the Vessel on its sale, unless the secured party expressly or impliedly authorized the dealing.  Although we have not yet reviewed the debenture underlying Michael Erceg's security interest, commercially it is likely that the debenture will not prohibit the Builder Seller [sic] the Vessel in the ordinary course of business.  If this is the case, then Michael Erceg will be deemed to have authorized the dealing (the sale) and his security interest in the proceeds would be extinguished following the purchase of the Vessel by Darby.

Ex. 6 (Scott Hawkins' June 12, 2003 email).

11

Case No. 04-20658-Civ-TORRES

In an email four days later, Hawkins reiterated that conclusion:

> We also confirm that, as a buyer in the ordinary course of business, Darby does not need to be concerned as to whether Michael Erceg's security interest extends to sums Sensation received from Darby.

Ex. 7 (Scott Hawkins' June 16, 2003 email to Brady).  Darby's New Zealand counsel sent both of these emails to Brady long before Darby settled with Sensation.  They establish, without question, that whatever Darby's reasons for settling with Sensation, they could not have been because Darby believed its interest in the Vessel was not protected.

### (b)   *Case law supports Darby's New Zealand counsel's advice.*

An evaluation of New Zealand law confirms the advice Darby's New Zealand lawyers gave it.  The PPSA (New Zealand's Personal Properties Securities Act), referenced in Hawkins's June 12, 2003 email, came into force on May 1, 2002. Because the PPSA was only recently enacted, there is very little case law interpreting it.  The Act was modeled on a similar statute in Canada, so New Zealand courts interpreting the PPSA look to Canadian law for guidance.  *See New Zealand Bloodstock Ltd., v. John Anthony Waller and Richard Dale Agnew*, [2005] NZCA 254 (noting that "the PPSA is based closely on legislation enacted by provincial legislatures in Canada which in turn have borrowed heavily from Art. 9 of the Uniform Commercial Code").  App., Tab E.

Section 53 of the PPSA provides as follows:

> Buyer or lessee of goods sold or leased in ordinary course of business takes goods free of certain security interest –
>
> (1)    A buyer of goods sold in the ordinary course of business of the seller, and a lessee of goods leased in the ordinary course of business of the lessor, takes the goods free of a

12

> security interest that is given by the seller or lessor that arises
> under section 45,unless the buyer or lessee knows that the
> sale or the lease constitutes a breach of the security
> agreement under which the security was created.

PPSA, § 53. App., Tab F. Accordingly, under the PPSA, in order for Darby to have taken

the Vessel free from the security interest created by the Debenture, (1) the Vessel must

have been considered a good; (2) the good must have been sold in the ordinary course of

business; (3) Darby must not have known that the sale constituted a breach of a security

agreement; and (4) Darby must have been a "buyer" and the goods must have been "sold."

As to the first element, there is no question that the Vessel is a "good." The contract

itself acknowledges this, referring in two places to the application of the "Goods and

Services Tax." *See* Ex. 2 (VCA, Articles 15(c) and 21). As to the second element, whether

goods are sold in the ordinary course of business of the seller is a question of fact

regarding the business practice of the seller. *See Fairline Boats Ltd. v. Leger*, 1980

Carswell Ont 607 (Ont. S. Ct. 1980)(finding that dealer in boats was acting in the ordinary

course of business where its business was to sell them). App., Tab G. Here, that fact is

undisputed. Sensation's business was the construction and sale of yachts. The third

element is also satisfied. Since the Debenture did not prohibit the sale of stock-in-trade

in the ordinary course of business at full market value, the Vessel's sale to Darby would

not have constituted a breach of the Debenture. *See* Ex. 5 (Debenture, Schedule B,

Section 4(a)(xi)(A)). Lastly, the VCA itself defines Darby as the "Purchaser," or "buyer."

Brady admitted this. *See* Ex. 1 (Brady Depo. Tr. at 180:8-18). This satisfies the fourth

prerequisite. Because each of the PPSA's four prerequisites are satisfied, Darby owned

13

Case No. 04-20658-Civ-TORRES

the Vessel free and clear of the lien created by the Debenture.  Darby's New Zealand attorneys themselves advised Darby of this fact:

> We also confirm that, as a buyer in the ordinary course of business, Darby does not need to be concerned as to whether Michael Erceg's security interest extends to sums Sensation received from Darby.

*See* Ex. 7 (Scott Hawkins' June 16, 2003 email to Brady).

A Canadian court has considered this issue in remarkably similar circumstances. Because New Zealand courts rely on Canadian law in construing the PPSA, a detailed discussion of that case is appropriate.

In *Spittlehouse v. Northshore Marine Inc.*, 1994 Carswell Ont 772, App., Tab H, the plaintiffs entered into a contract with the defendant Northshore Marina for the purchase of a 46-foot boat. The plaintiffs paid ninety percent of the purchase price and were prepared to pay the balance upon the boat's delivery as provided in the contract. The *Spittlehouse* contract of sale provided that title to the boat shall be transferred to the buyer when the buyer has made payment in full.  Similar to the lien created by the Debenture, in *Spittlehouse* a financial corporation had a perfected security interest in all of the marina's assets. At some time prior to the boat's delivery, the Marina defaulted on payment and the financial corporation perfected its security, appointed a receiver, and seized the vessel. *Id.*  Just as Darby claims it feared could have happened to it if Sensation went bankrupt, the financial corporation in *Spittlehouse* asserted that its perfected security interest in the boat meant the purchaser had no title to the vessel even though it had paid 90% of the

14

purchase price.  *Id.*  The financial corporation claimed the purchaser was merely an unsecured creditor.

Relying on section 28(1) of the Personal Property Security Act of Canada – a verbatim counterpart to section 53 of New Zealand PPSA – the *Spittlehouse* court rejected the financial corporation's claims. It found that the plaintiff had purchased the vessel from the builder in the ordinary course of the builder's business, and that in the event of marina's bankruptcy, it should have taken the boat free and clear of any other security interest. In words of particular importance here, the *Spittlehouse* court explained:

> There is no question that in the contract between the plaintiffs and Northshore, the latter was acting in the ordinary course of business. It was a dealer in boats and its business was to sell them. The plaintiffs were seeking to buy a boat, indeed the very boat that was the subject of the contract. They had no knowledge of the security agreement between Northshore and Transamerica, much less of any breach of that agreement (if indeed there was a beach). The only possible problems are whether the plaintiffs were buyers of the boat and Northshore was the seller. In my opinion they indubitably were.
>
> * * *
>
> The agreement between them states "the dealer agrees to sell and the buyer  agrees to purchase" and refers "to the equipment being purchased" and that such equipment "is being sold." It cannot be regarded as anything but a sale . . .
>
> * * *
>
> . . . The plaintiff may take advantage of s. 28(1) of our Act [i.e. take the property free of the security interest] upon tendering the balance and purchase price . . . .

*Id.* at 774.

Case No. 04-20658-Civ-TORRES

As *Spittlehouse* makes clear, upon making final payment Darby would have taken

the Vessel free of all security interests.  Darby's New Zealand lawyers told Brady this in the

June 12, 2003 email:

> Although we have not yet reviewed the debenture underlying
> Michael Erceg's security interest, commercially it is likely that
> the debenture will not prohibit the Builder Seller [sic] the
> Vessel in the ordinary course of business.  **If this is the case,
> then Michael Erceg will be deemed to have authorized the
> dealing (the sale) and his security interest in the proceeds
> would be extinguished following the purchase of the
> Vessel by Darby**.

Ex. 6 (Hawkins June 12, 2003 email to Brady).

Brady aptly noted during his deposition that he would not have settled with

Sensation and given up all of Darby's rights if he could have taken the Vessel free and

clear of the Debenture:

> Q.  Were you told by any of your lawyers prior to
> giving up your rights because of this lien issue,
> that, in fact, New Zealand law favored you that
> you owned it?
>
> A.  Not that I recall.
>
> Q.  Would that have been important to you if that is
> or was the law in 2004?
>
> A.  If the - - - -
>
> A.  Yeah. I mean, if I found out that I would not have
> lost, there was no way for me to lose on the lien,
> sure, it would have been important.
>
> Q.  And would you have still settled?

16

Case No. 04-20658-Civ-TORRES

A.    If I did, nowhere near like it is.  Because there
was nothing to settle.  He would have nothing on
his side to settle against.

Ex.1 (Brady Depo. Tr. at 180:19-21, 181:1-13).

As *Spittlehouse* teaches, Darby was not in the "weak bargaining position" it alleges it was in.  To the contrary, as a matter of New Zealand law, Darby would have taken the Vessel free and clear of the lien created by the Debenture.  Brady was correct when he testified that Sensation would have had no basis upon which to force settlement with Darby if New Zealand law favored Darby.  As the foregoing illustrates, New Zealand law did, in fact, favor Darby.  Darby therefore settled at its peril.  It cannot revive those claims in an action against its attorneys.

## C.    Darby Abandoned Its Claims For Liquidated Damages.

In order to establish a claim for legal malpractice under Florida law, Darby must prove: (1) the employment of H&K; (2) H&K's neglect of a reasonable duty; and (3) that H&K's negligence was the proximate cause of Darby's loss.  *Brennan v. Ruffner,* 640 So. 2d 143, 145 (Fla. Dist. Ct. App. 1994), or what some courts have referred to as the suffering of "redressable harm."  See *Lenahan v. Russell L. Forkey, P.A.,* 702 So. 2d 610, 611 (Fla. 4th DCA 1997).  Failure to establish any one of these elements renders the claim defective as a matter of law.[4]  Here, Darby cannot demonstrate redressable harm because it abandoned all damage claims against Sensation prior to any determination that its rights had not been adequately protected.  Summary judgment is an appropriate vehicle to

---

[4]     The first element is not at issue here.  With respect to the second element, negligence is assumed for purposes of this motion only.

17

Case No. 04-20658-Civ-TORRES

resolve the applicability of the abandonment defense. *See Segall v. Segall*, 632 So. 2d 76

(Fla. Dist. Ct. App. 1994)(affirming granting of summary judgment in favor of attorneys

because plaintiff abandoned its malpractice claim).

Abandonment occurs in a malpractice action where the existence of redressable

harm depends upon the outcome of the underlying claim. *Bierman v. Miller,* 639 So. 2d

627 (Fla. Dist. Ct. App. 1994).  In *Bierman*, the question before the court was whether a

former client filed suit prematurely.  The court of appeals held that the plaintiff  had not

suffered redressable harm because the viability of the document upon which it based its

claims of malpractice had not been tested:

> Miller filed suit prematurely, as he has not yet suffered
> redressable harm. One of the central issues in the federal suit is
> the viability of the severance agreement: Miller's former
> employer seeks to void the agreement because of Miller's
> alleged fraud and misrepresentation; Miller seeks to enforce the
> agreement. **Until the validity of the agreement is decided in
> federal court there can be no determination in the
> malpractice action as to whether Bierman was negligent in
> negotiating and drafting that agreement.**

*Id.* at 628 (emphasis added); *see Bradley v. Davis*, 777 So2d 1189 (Fla. Dist. Ct. App.

2001)(affirming summary judgment that plaintiff abandoned claim by failing to pursue

appeal); *see also Throneburg, III v. Boose, Casey, Ciklin, Lubitz, Martens, McBane &

O'Connell*, 659 So. 2d 1134 (Fla. Dist. Ct. App. 1995)(legal malpractice injury was not

established merely because it was thought that amendment to declaration of covenants

was ineffective . . . there was no redressable harm to the client until the court found the

amendment to be invalid); *Segall,* 632 So. 2d 76 (where plaintiffs' allege that because of

18

attorney malpractice jury returned a verdict against them at trial, any cause of action against attorney for malpractice is considered abandoned where there is a settlement and no appeal of the adverse underlying litigation).

Another case on point is *Pennsylvania Ins. Guar. Ass'n v. Sikes,* 590 So.2d 1051 (Fla. Dist. Ct. App. 1991). In *Sikes*, an insurer's attorney drafted an answer in which he failed to deny negligence. The attorney did, however, deny negligence in the insurer's pleading of the affirmative defense of comparative negligence. The plaintiffs claimed that the answer was insufficient to deny liability. The trial court agreed, and trial proceeded only on the issue of damages. After the jury returned a verdict against the insurer, the insurer's attorney recommended appeal. Before the appeal was perfected, the insurer settled the case and then sued its attorney for malpractice.

In defense of its former client's claims, the attorney claimed that the insurer had abandoned its claim by settling. The appellate court agreed. It held that the settlement constituted abandonment because "[i]f the appeal in the personal injury [case] had run its appellate course, in all likelihood, there would have been a reversal of the judgment." *Sikes,* 590 So. 2d at 1053.

Darby cannot establish redressable harm merely because it *thought* Articles 16(a) and (d) were ambiguous. There could be no redressable harm to Darby until it was established that the VCA had in fact failed to accomplish its purpose. The case law is clear that a client's belief that an attorney may have potentially committed malpractice is an insufficient basis upon which to establish redressable harm. If the claim of redressable harm is based upon the viability of a document, the document must fail before redressable

19

harm can be found. *See Peat, Marwick, Mitchell & Co. v. Lane*, 565 So. 2d 1323 (Fla. 1990)(plaintiffs did not suffer redressable harm until the tax court entered judgment against them based on tax deficiency notice, because until that time, "the [plaintiffs] knew only that Peat Marwick **might have been negligent**")(emphasis added). Where one follows incorrect advice based on knowledge of potential harm, "the harm [does] not become an actuality until a court render[s] a judgment holding that the legal instruments failed to fulfill their purpose." *See Porter, III v. Ogden, Newell & Welch*, 241 F. 3d 1334, 1339 (11th Cir. 2001)(citations omitted). The settlement with Sensation foreclosed a judgment that the VCA failed to fulfill its purpose. Moreover, as we have seen above, as a matter of law Darby's interests were protected. Darby abandoned its claims when it settled with Sensation prior to the determination of redressable harm as to its claims related to the VCA's drafting.

## D.   Darby Cannot Recover Consequential Damages Related to Delay.

In a legal malpractice action, the measure of damages is what the client would have recovered but for the attorney's negligence. *See Kay v. Bricker*, 485 So. 2d 486, 487 (Fla. Dist. Ct. App. 1986), a party's damages are limited to those it could prove in the underlying action. Here, with respect to the delay-related damages, Darby alleges that in its settlement with Sensation it surrendered its rights to recover those damages from Sensation. As such, the measure of its damages against H&K is only what Darby could have recovered from Sensation. Because Darby's recovery on its delay-related claims against Sensation would have been limited by the VCA's limitation of liability and liquidated damages provisions, its recovery against H&K is similarly limited.

20

Case No. 04-20658-Civ-TORRES

The VCA is clear that consequential damages are not recoverable in an action under the Agreement:

> Limitation of Liability: In no event, whether based upon contract, tort, warranty, or otherwise, shall Purchaser or Builder be liable for or obligated in any manner to pay special, consequential, punitive, incidental, indirect or similar damages for any reason in connection with this Agreement and the transactions contemplated hereby except as otherwise set forth in this Agreement. Both the Builder's and the Purchaser's obligations hereunder shall be limited to those expressly set out and assumed by Purchaser and Builder, respectively, under this Agreement.

Ex. 2 (VCA, Article 29 (e)). Instead, Darby's exclusive remedy in the event the Vessel was not delivered on a timely basis was the recovery under the VCA's liquidated damages clause:

> (b) In the event that delivery of the Vessel does not occur by the Delivery Date, a penalty of US$3,000 per day shall be assessed after 30 days from the Delivery Date for each day of delay.

Ex. 2 (VCA, Article 15(b)).

Together, the limitation of liability and liquidated damages provisions limit the recovery of consequential damages related to delay.[5] Damages are limited to $3,000 per day of delay. Darby's alleged lost charter revenues, naval architect fees and costs, and the increased cost for equipment that was purchased in 2004 instead of 2002 are all consequential damages arising from the Vessel's delayed delivery. As such, these two clauses would have prevented Darby's recovering these damages from Sensation. Darby

---

[5]     Darby does not contend that H&K was negligent in drafting these provisions.

21

therefore cannot recover them from H&K here.  Assuming the claims have not been abandoned or otherwise limited by the application of the VCA or New Zealand law, Darby's potential recovery against H&K on delay-related claims is subject to the $3,000 per day of delay limitation.

## 1.   *The VCA's Liquidated Damages Clause is not Penal in Nature.*

Under English law, a liquidated damages clause is enforceable, irrespective of the actual loss suffered, so long as it represents the genuine pre-estimate of the loss likely to be suffered and is not a sum which is penal in nature.  *See Dunlop Pneumatic Tube Co., Ltd. v. New Garage and Motor Co. Ltd.* [1915] A.C. 79 (House of Lords).[6]  App., Tab I.  If a liquidated damages clause is not penal, the injured party will only be able to recover the agreed amount irrespective of the actual loss suffered.  *See Cellulose Acetate Silk Co. Ltd. v. Widnes Foundry* (1925), [1933] A.C. 20 (House of Lords 1932)(holding that the sum of 20£ a week was the full amount that the plaintiffs agreed to pay towards compensation to the defendants for delay in completion, and no more).  App., Tab J.

The question of whether a sum is a penalty or liquidated damages is a question of construction to be decided upon the terms and inherent circumstances of each particular

---

[6]    English law is consistent with U.S. law on this point. For example, under Florida law the parties to a contract may stipulate in advance to an amount of money to be paid or retained as damages in the event of a breach. *See Miami-Dade County v. F&L Const.*, 819 So. 2d 885 (Fla. Dist. Ct. App. 2002).  The test is whether the damages flowing from the breach are readily ascertainable at the time the contract is executed, in which case the liquidated damages clause will constitute an unenforceable penalty.  *See Lefemine v. Baron*, 573 So. 2d 326, 327 (Fla. 1991). Should the damages not be readily ascertainable at the time the contract is drawn, a liquidated damages clause will stand, provided the damages to be paid are not unreasonable or disproportionate to the loss actually suffered. *Id.*

Case No. 04-20658-Civ-TORRES

contract. See *Philips Hong Kong Ltd. v. Attorney General of Hong Kong,* (1993) 61 B.L.R. 41. App., Tab K. English courts have historically found that liquidated damages are unlikely to be penal or oppressive where two sophisticated commercial parties negotiate and agree to an allegedly penal provision. *See id.* at 11.

Darby and Sensation were sophisticated commercial parties. They both were represented by counsel. Darby cannot dispute the validity of the $3,000 per day liquidated damages sum. To the contrary, Darby relies on that very provision to calculate delay damages of $3,056,351.55. *See* Ex. 4 (Darby's Amended Answers to Defendants' First and Second Set of Interrogatories at p.4)(emphasis added). There is no genuine issue of material fact regarding the enforceability or application of the limitation of liability or liquidated damages clauses. Under the VCA, all damages relating to delay in the Vessel's delivery are subsumed within the liquidated damages clause.

### 2. The Limit of Darby's Delay Damages is the Amount Calculated Under the Liquidated Damages Clause.

Summary judgment is an appropriate vehicle to resolve the applicability of a contractual limitation of liability clause. *See Ryder Commc'n, Inc., v. ATT, Inc.,* 2005 WL 3274998 (11th Cir. 2005)(affirming granting of partial summary judgment on limitation of liability provision); *see also Florida Power and Light Co. v. Mid-Valley, Inc.,* 763 F. 2d 1316 (11th Cir. 1985)(affirming summary judgment based on limitation of liability clause). English law is well settled that, "liquidated damages clauses constitute an exhaustive agreement in respect of damages for non-completion or delay. *See Temloc Ltd. v. Errill Properties Ltd.,* 39 B.L.R. 30 (1988), App., Tab L; *see also Surrey Heath BC v. Lovell*

Case No. 04-20658-Civ-TORRES

*Construction Ltd.*, 42 B.L.R. 26 (1988)(finding that liquidated damages provision did not extend to losses such as the inability to realize rental income), App., Tab M; *Robophone Facilities Ltd. v. Blank,* 1 W.L.R. 1428 (1966)(finding that the liquidated damages stipulated in the contract were a genuine pre-estimate and therefore recoverable even though the actual loss suffered by the claimant was greater than the payment provided by the liquidated damages clause). App., Tab N.

Most relevant to the analysis in this case is *Surrey*. In *Surrey*, the Plaintiff city engaged a contractor to design and construct a new office building. Before the building's completion, a fire broke out, causing considerable damage and delay in the project. The council sued the contractor for damages. Among the damages it sought to recover were:

(I)     Interest on capital invested up until the date of expected completion;

(ii)    Furniture storage costs;

(iii)   Damage to telephone installation in the new building;

(iv)   Damage to computer wiring in the new building;

(v)    Additional staff costs;

(vi)   Loss of car parking charges at Civic Office car park;

(vii)  Additional costs of repairs and modification to telephone installation at old premises;

(viii) The costs of employment of a clerk of works during the rebuilding of the works damaged by fire;

(ix)   The cost of employment of liaison staff during the same;

(x)    Additional professional fees due to rebuilding works; and

(xi)   Additional maintenance costs incurred at the old premise.

Case No. 04-20658-Civ-TORRES

The contractor argued that the damages sought were delay damages and, therefore, were barred by the contract's liquidated damages provision. *Id.* at 36. The trial court agreed. It held that one cannot recover delay damages in excess of a stipulated liquidated sum, explaining:

> The provision for the deduction or payment of liquidated and ascertained damages on their true construction did extend to losses such as [the city's] inability to realize sale proceeds or rental income in respect of premises which they would have vacated upon completion of the new offices or losses such as the extra involvement of the clerk of works of liaison staff.
>
>         \*   \*   \*
>
> All damages which are a consequence of delay are deemed to have been liquidated unless the contrary is proved.

*Id.* at 26, 28.

As with the plaintiff city in *Surrey*, there can be no dispute here that several elements of damages Darby seeks to recover from H&K constitute damages resulting from delay. Darby itemizes its damages as follows:

| | | |
|---|---|---|
| • | Additional naval architect fees due to dispute delays | $73,470.74 |
| • | Cost difference for items purchased in 2004 versus 2002 | $83,018.84 |
| • | Loss of charter revenue from the completion of the vessel until Darby chartered the Vessel | $460,000.00 |

Ex. 4 (Darby's Amended Answers to Defendants First and Second Set of Interrogatories at pp. 3-4) Each of these items are consequential damages related to the delay in the Vessel's delivery. Recovery of those damages is circumscribed by the limitations of liability and liquidated damages clauses.

25

Case No. 04-20658-Civ-TORRES

(a)    *Darby's claim for "Loss Of Charter Revenues" is barred.*

Similar to the loss rental profits claimed by the city in *Surrey*, Darby's claims for "loss of charter revenues" are damages which arise from the Vessel's delayed delivery. Lost profits are the quintessential example of losses which are likely to flow from a delay. *See Surrey,* 42 B.L.R. at 57, App., Tab M; *see also Masons v. WD King Ltd.,* 2003 WL 23014738 (Queen's Bench Div. 2003). App., Tab O.

In *Masons*, a law firm was sued by its former client for lost profits it claimed it would have received from a construction company had the construction contract for the completion of an office building provided for unliquidated damages, instead of liquidated damages. *Id.* The *Masons* court rejected this claim, holding instead that lost profits from lost rent on the office building was a loss that flowed from delay and, therefore was unrecoverable because of the liquidated damages clause. *Id.* at 57.

Likewise, Darby's claim for "loss of charter revenues" arises from the delay in the Vessel's construction. As Brady himself explains it, Darby had to reject several weeks of charter engagements because the Vessel was not completed on time. *See* Ex. 1 (Brady Depo. Tr. at 205-206). These alleged damages fall squarely under the VCA's liquidated damages clause. As a matter of law, they are not separately recoverable.

(b)    *Darby's claim for "Additional Naval Architect Fees Due to Delay Disputes" is barred.*

Also failing under this analysis are the alleged costs to hire a naval architect to resolve delay disputes. Darby itself has classified the damages here as "naval architect fees due to dispute delays," thus conceding the nature of theses damages. Ex. 4 (Darby's

Case No. 04-20658-Civ-TORRES

Amended Answers to Defendants First and Second Set of Interrogatories at p.3)  Brady

himself testified that delay was the reason for the payment to the naval architect:

> Q.   It relates to the additional inspections that had to
> be made because the boat was delayed and had
> to continue to inspect; correct?
>
> A.   Yes, I would assume.

Ex. 1 (Brady Depo. Tr. at 200:10-13).  Because these are consequential damages, they

are barred by the VCA's limitation of liability clause.  Darby's sole measure of damage is

proscribed by the negotiated liquidated damages clause.  *See Surrey*, 42 B.L.R. at 52.

App., Tab M; Ex. 6 (Scott Hawkins' June 12, 2003 email to Brady).

### (c)   *Darby's claim for "Cost Difference for Items Purchased in 2004 vs. 2002" is barred.*

Damages relating to an alleged "difference in price for items purchased in 2004 vs.

2002" are also barred by the limitations of liability and liquidated damages clauses.  Like

the damages discussed above, these are consequential damages directly related to delay.

Brady has admitted this:

> Q.   Okay. Cost difference. Does this mean that you
> had been able to purchase these items in 2002
> instead of 2003 and 2004 that the items would
> have cost less?
>
> A.   Yeah. Now I know what that is. This is saying
> because of the delays we had a lot more
> inspections that we originally anticipated,
> Because of the delays we had a lot of costs
> incurred from the difference and price of things.
>
> Q.   So this is also a delay damage?
>
> A.   Yes.

27

Case No. 04-20658-Civ-TORRES

Ex. 1 (Brady Depo. Tr. at 200:14-24).

As consequential damages, each of these elements of Darby's claim are barred by Article 29(e) of the VCA. Because they were incurred as a result of delays, they are duplicative of the damages circumscribed by the liquidated damages provision. H&K is entitled to partial summary judgment in its favor barring these three claims of damage.

### III.   CONCLUSION

As demonstrated above, Darby's ownership interest in the Vessel was protected. Therefore, H&K's drafting of the VCA could not have caused Darby, in order to secure its ownership interest, to give up its rights to delay-related damages or its rights to recover from Sensation for problems with the Vessel's draft. Accordingly, H&K is entitled to summary judgment on each element of these alleged damages, to wit:

| | | |
|---|---|---|
| • Loss of late fees (*i.e.* delay damages) | | $3,065,351.55 |
| • Loss of charter revenues | $ | 460,000.00 |
| • Additional naval architect fees due to dispute delays | $ | 73,470.74 |
| • Cost difference for items purchased in 2004 vs. 2002 | $ | 83,018.84 |
| • Cost to repair swim platform and modify stern | $ | 661,528.13 |

Alternatively, even if it could recover delay-related damages and damages relating to Vessel draft, certain elements of its damages are expressly prohibited by the VCA. Specifically, the lost charter revenues, naval architect fees and costs, and cost difference

Case No. 04-20658-Civ-TORRES

for later acquired equipment are contractually prohibited consequential damages. For the reasons set forth above, the court should grant H&K summary judgment on these claims.

Dated:     May 7, 2007          Respectfully Submitted,
           Miami, FL

                                 s/Jeffrey T. Foreman
                                Richard H. Critchlow (FL Bar No. 155227)
                                Jeffrey T. Foreman (FL Bar No. 612200)
                                Ismael Diaz (FL Bar No. 575771)
                                KENNY NACHWALTER, P.A.
                                1100 Miami Center
                                201 South Biscayne Boulevard
                                Miami, FL 33131-4327
                                Telephone    305-373-1000
                                Facsimile    305-372-1861
                                *Attorneys for Defendants*

### Certificate of Service

I hereby certify that on May 7, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                          s/Jeffrey T. Foreman

293935

29

## SERVICE LIST

*Darby Maritime Limited v. Holland & Knight, LLP, et al.*
Consent Case No. 04-20658-CIV-Jordan/Torres
United States District Court, Southern District of Florida

Lawrence Kellogg, Esq.
LAK@tewlaw.com
Tew Cardenas LLP
Four Seasons Tower
1441 Brickell Avenue, 15th Floor
Miami, FL 33131
Telephone    305-536-1112
Facsimile    305-536-1116
**Attorneys for Darby**
**Via EM/ECF**

Richard H. Critchlow
rhc@kennynachwalter.com
Jeffrey T. Foreman
jforeman@kennynachwalter.com
Ismael Diaz (FL Bar No. 575771)
idiaz@kennynachwalter.com
Kenny Nachwalter, P.A.
1100 Miami Center
201 South Biscayne Boulevard
Miami, FL 33131-4327
Telephone    305-373-1000
Facsimile    305-372-1861
**Attorneys for Defendant Holland &**
**Knight, LLP *Michael T. Moore and***
***Danielle J. Butler***